# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| Travis Mullis, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) C.A. No.: 2:16-cv-3578-PMD ) ) |
| v. | ) **ORDER** ) |
| Wings Over Spartanburg, LLC, Vista Wings, LLC, Aetius Companies, LLC, Aetius Restaurant Holdings, LLC, and Aetius Restaurant Group, LLC, | ) ) ) ) ) |
| Defendants. | ) ) ) |

This matter is before the Court on Plaintiff's motion for conditional certification (ECF No. 8). For the reasons set forth herein, Plaintiff's motion is granted in part and denied in part.

## BACKGROUND

On November 7, 2016, Plaintiff commenced this action on behalf of himself and all others similarly situated, seeking, *inter alia*, unpaid minimum wages and unpaid overtime wages pursuant to the Fair Labor Standards Act ("FLSA"). Plaintiff is a former bartender for Wings Over Spartanburg, LLC, and Vista Wings, LLC, and he seeks recovery from all Defendants, who own and operate a number of restaurants in the Southeast known as Wild Wing Cafe ("Wild Wing").

Plaintiff primarily alleges Defendants used tip pools that violated the FLSA. Specifically, Plaintiff asserts Defendants paid their bartenders an hourly wage lower than minimum wage using the FLSA's Tip Credit provision, 29 U.S.C. § 203(m). Plaintiff further asserts that while Defendants were paying less than the statutory minimum wage using the Tip Credit provision, they required bartenders to contribute portions of their tips to Wild Wing's tip

pools to compensate other employees. Finally, Plaintiff alleges that some of the employees who received money from those tip pools were expeditors who did not qualify to share in the tip pools because they did not customarily and ordinarily receive tips. Because these non-tipped employees—the expeditors—did not customarily and ordinarily receive tips, as required by the Tip Credit provision, Plaintiff alleges that the tip pools he and the other potential class members shared with the expeditors violated the FLSA.

## PROCEDURAL HISTORY

Plaintiff filed his motion for conditional certification on December 21, 2016. The Court granted Defendants' request for an extension of time to respond, and Defendants ultimately filed a response in opposition on January 11, 2017. Plaintiff filed his reply on January 18. Accordingly, this matter is now ripe for consideration.

## LEGAL STANDARD

Under the FLSA, employees may institute a collective action against their employer on behalf of themselves and similarly situated employees. The FLSA's collective action provision states that:

> [a]n action to recover [unpaid overtime compensation] may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). The mechanism outlined in § 216(b) is designed to facilitate the efficient adjudication of similar claims by "similarly situated" employees, permitting the consolidation of individual claims and the pooling of resources in prosecuting such actions against their employers. *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989); *LaFleur v. Dollar Tree Stores, Inc.*, 30 F. Supp. 3d 463, 467 (E.D. Va. 2014), *reconsideration denied*, 2014

WL 2121563 (E.D. Va. May 20, 2014), *and motion to certify appeal denied*, 2014 WL 2121721 (E.D. Va. May 20, 2014); *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 367 (S.D.N.Y. 2007). In deciding whether the named plaintiffs in an FLSA action are "similarly situated" to other potential plaintiffs, courts generally employ a two-stage approach.[1] *Purdham v. Fairfax Cty. Pub. Sch.*, 629 F. Supp. 2d 544, 547 (E.D. Va. 2009) (quoting *Parker v. Rowland Express, Inc.*, 492 F. Supp. 2d 1159, 1164 (D. Minn. 2007)); *see also Regan v. City of Charleston*, No. 2:13-cv-3046-PMD, 2014 WL 3530135, at *2 (D.S.C. July 16, 2014); *Pelczynski v. Orange Lake Country Club, Inc.*, 284 F.R.D. 364, 367 (D.S.C. 2012); *Simons v. Pryor's, Inc.*, No. 3:11-cv-792-CMC, 2011 WL 6012484, at *1 (D.S.C. Nov. 30, 2011); *MacGregor v. Farmers Ins. Exch.*, No. 2:10-cv-3088-DCN, 2011 WL 2981466, at *2 (D.S.C. July 22, 2011).

The first step in this process, which is the subject of the instant motion, is the "notice," or "conditional certification," stage. *Purdham*, 629 F. Supp. 2d at 547. Here, "a plaintiff seeks conditional certification by the district court in order to provide notice to similarly situated plaintiffs" so that they can "opt-in" to the collective action. *Pelczynski*, 284 F.R.D. at 367–68. With regard to this notice phase, "[t]he Supreme Court has held that, in order to expedite the manner in which collective actions under the FLSA are assembled, 'district courts have discretion[,] in appropriate cases[,] to implement . . . § 216(b) . . . by facilitating notice to potential plaintiffs.'" *Purdham*, 629 F. Supp. 2d at 547 (quoting *Hoffman-La Roche, Inc.*, 493 U.S. at 169). At this stage, the court reviews the pleadings and affidavits to determine whether

---

1. Although the Fourth Circuit has not yet enunciated a test for conditional certification of collective actions, district courts in the Fourth Circuit, including this Court, typically follow the two-stage, or two-step, approach when deciding whether named plaintiffs are similarly situated to potential plaintiffs. *E.g.*, *LaFleur*, 30 F. Supp. 3d at 467 ("District courts within . . . the Fourth Circuit . . . have uniformly employed a two-step inquiry in deciding whether to certify a collective action under the FLSA . . . ."); *Curtis v. Time Warner Entm't*, No. 3:12-cv-2370-JFA, 2013 WL 1874848, at *2 (D.S.C. May 3, 2013) ("Although the Fourth Circuit has not directly addressed the appropriate standard for certifying a collective action under § 216(b), district courts in this circuit, including this court, follow the [two-stage] process . . . .").

the plaintiff has carried his burden of showing that he is similarly situated to the other putative class members. *Pelczynski*, 284 F.R.D. at 368; *Purdham*, 629 F. Supp. 2d at 547–48. "Because the court has minimal evidence, this determination is made using a fairly lenient standard." *Steinberg v. TQ Logistics, Inc.*, No. 0:10-cv-2507-JFA, 2011 WL 1335191, at *1 (D.S.C. Apr. 7, 2011). Plaintiffs must make only "a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Purdham*, 629 F. Supp. 2d at 548. If the court determines that the proposed class members are similarly situated, the court conditionally certifies the class. *Steinberg*, 2011 WL 1335191, at *1. The putative class members are then notified and afforded the opportunity to "opt-in," and the case proceeds as a representative action throughout discovery. *Id.* (citing *Scholtisek v. Eldre Corp.*, 229 F.R.D. 381, 387 (W.D.N.Y. 2005)); *see also Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1530 (2013) (citation omitted) ("'[C]onditional certification' does not produce a class with an independent legal status, or join additional parties to the action. The sole consequence of conditional certification is the sending of court-approved written notice to employees, who in turn become parties to a collective action only by filing written consent with the court.").

Second, after the court has conditionally certified the class, the potential class members have been identified and notified, and discovery has been completed, "a defendant may then move to decertify the collective action, pointing to a more developed record to support its contention that the plaintiffs are not similarly situated to the extent that a collective action would be the appropriate vehicle for relief." *Pelczynski*, 284 F.R.D. at 368. At this optional "decertification stage," the court applies a heightened fact-specific standard to the "similarly situated" analysis. *Steinberg*, 2011 WL 1335191, at *2; *see Pelczynski*, 284 F.R.D. at 368.

"Courts have identified a number of factors to consider at this stage, including (1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendants that appear to be individual to each plaintiff; and (3) fairness and procedural considerations." *Curtis*, 2013 WL 1874848, at *3 (internal quotation marks omitted). If the court determines that the plaintiffs are not, in fact, similarly situated, it may decertify the class, dismiss the opt-in plaintiffs' claims without prejudice, and permit the named plaintiffs to proceed on their individual claims. *Id.*

## DISCUSSION

Plaintiff requests that this Court: (1) conditionally certify a class of individual bartenders ("Proposed Class"), as detailed further herein; (2) require Defendants to produce the names, mailing and e-mail addresses, and telephone numbers of putative class members in a commonly-used electronic format within twenty days; (3) approve Plaintiff's proposed class-member notification and consent forms; and (4) authorize a third-party administrator to contact and send notices to putative class members. The Court will address each request, along with Defendants' objections thereto, in turn.

### I.     Conditional Certification

Plaintiff moves to conditionally certify the following Proposed Class:

> All individuals who worked as a Wild Wing Café <u>Bartender</u> after September 9, 2013 at one of the following locations (Mt. Pleasant, Downtown Charleston, Spartanburg, North Charleston, Bluffton, Columbiana, The Vista, Greenville, Hilton Head, Wilmington, Southwest Charlotte, and Uptown Charlotte) and who were compensated by a direct hourly rate (excluding tips) less than $7.25 per hour; and who were required to give a portion of their tips to an expeditor.

(Pl's. Mem. Supp. Mot. Cond'l Class Certification, ECF No. 8-1, at 1.)

Defendants object to the breadth of the Proposed Class, stating that the class should be limited to bartenders from the Spartanburg and Vista restaurants. The Court agrees.

The Court notes that Plaintiff only offers three new declarations in support of his request for his Proposed Class. First, he offers his own declaration. Plaintiff worked at the Spartanburg and Vista restaurants as both a server and a bartender, but he never worked at any of the other restaurants. Next, Plaintiff offers a new declaration from David Meller, who worked as a server and occasionally as a bartender at the Spartanburg Wild Wing. Meller is the eponymous plaintiff in *Meller v. Wings Over Spartanburg, LLC*, No. 2:15-cv-2094-PMD (D.S.C.). Finally, Plaintiff's counsel himself offers a declaration that he spoke with a bartender at the Vista Wild Wing restaurant who claimed he was required to give an expeditor a portion of his tips. Plaintiff also seeks to rely on the servers' declarations in the *Meller* case.[2]

Because *Meller* only involves servers, and this case only involves bartenders, the declarations in *Meller* cannot be used to support conditional certification of Plaintiff's Proposed Class. Accordingly, Plaintiff, Meller, and Plaintiff's counsel's declarations, along with the receipt attached to Mullis' and Meller's declarations, constitute the only evidence the Court may consider at this juncture. Thus, there is no evidence whatsoever that the other ten Wild Wing restaurants also use a similar tip-pool system. Moreover, because Plaintiff never worked at those ten restaurants, it is doubtful that he would have standing to sue those entities even if he had produced evidence that they all required bartenders to share tips with expeditors. *See Roman v. Guapos III, Inc.*, 970 F. Supp. 2d 407, 416 (D. Md. 2013). As a result, the Court must pare down Plaintiff's Proposed Class to only encompass bartenders at the Spartanburg and Vista restaurants. However, the Court does find that bartenders at the Spartanburg and Vista locations are

---

2. As clearly set forth in the Proposed Class definition and in Plaintiff's briefs, this case involves bartenders at Wild Wing restaurants, not servers. Plaintiff briefly blames the Court for its failure to fit bartenders into the proposed class in *Meller*, stating that this action would not be necessary had the Court done so. Any such blame is misplaced. Plaintiffs in *Meller* proposed a class definition that only included servers. As the Court noted during the parties' conference call, and in its September 28 Text Order, the term "server" does not include bartenders.

sufficiently similarly situated to warrant conditional certification because Plaintiff has made a preliminary showing that they shared the same job duties and were subject to the same tip-out policy. Accordingly, Defendants are hereby ordered to produce the putative class members' information to the agreed-upon third-party administrator within twenty days.[3]

## II.     Notice to Putative Class Members

The Court now turns to Plaintiff's proposed notice and Defendants' objections to it. The Court must address the method by which the third-party administrator will contact the putative class members. Defendants argue that the third-party administrator should mail the notice, and that no other method of contact with the putative class members is necessary. In contrast, Plaintiff argues that notice should be mailed and e-mailed. Plaintiff also requests that the third-party administrator be permitted to send the notice by text message if both the mailed and the e-mailed notice are returned as undeliverable.

District courts have taken conflicting positions and approaches as to what information regarding potential plaintiffs may or must be disclosed to named plaintiffs at the notice stage of FLSA actions.[4] Although email addresses are more routinely disclosed, district courts in this

---

3.     The parties appear to agree to the use of a third-party administrator. As it did in *Meller*, the Court again orders the parties to meet and confer to agree on a suitable third-party administrator. In the interest of the putative class members' privacy, Plaintiff's counsel may not contact any putative class member until they opt-in, and counsel may not obtain a copy of any putative class member list from the third-party administrator or anyone else. Plaintiff's counsel shall bear the expense of the third-party administrator, which may be recovered if Plaintiff is the prevailing party.

   Defendants do not wish to use Dahl Administration as the third-party administrator in this case due to their experience with Dahl in *Meller*. To the extent possible, the parties shall attempt to agree on an alternative third-party administrator.

4.     *Compare Velasquez v. Digital Page, Inc.*, No. 11-3892 LDW AKT, 2014 WL 2048425, at *15 (E.D.N.Y. May 19, 2014) ("In general, it is appropriate for courts in collective actions to order the discovery of names, addresses, telephone numbers, email addresses, and dates of employment of potential collective members."), *with Amrhein v. Regency Mgmt. Servs., LLC*, No. SKG-13-1114, 2014 WL 1155356, at *10 (D. Md. Mar. 20, 2014) ("Courts in this district hold that absent a showing by plaintiffs of a 'special need' for disclosure of class members' telephone numbers or other personal information, such as social security numbers or dates of birth, ordering such disclosure is inappropriate.").

circuit have required a showing of a "special need" before requiring the disclosure of telephone numbers. *See Ruiz v. Monterey of Lusby, Inc.*, No. DKC 13-3792, 2014 WL 1793786, at *3 n.1 (D. Md. May 5, 2014) ("Defendants will not . . . be required to provide phone numbers for potential opt-in plaintiffs at this time because Plaintiffs have made no showing of any 'special need' for the disclosure of this information." (quoting *Calderon v. Geico Gen. Ins. Co.*, No. RWT 10cv1958, 2011 WL 98197, at *9 (D. Md. Jan. 12, 2011))). The Court finds that Plaintiff has not demonstrated a special need in this case for the use of text message notice, but it approves sending notice by both U.S. Mail and e-mail. This will address the issues the parties encountered in *Meller*.[5] Having determined how the notice will be disseminated, the Court turns to the timeline and the content of that notice.

Plaintiff wants putative class members to have sixty days to opt in to this action, while Defendants want thirty or forty-five days. The parties and their counsel[6] agreed to a forty-five day opt-in period in *Meller*, and the Court concludes that a forty-five day opt-in period is reasonable here as well. Additionally, the Court grants Defendants' request that the look-back period extend only three years from the date the third-party administrator mails the notice. Plaintiff argues that the look-back period should be tied to the date that his counsel moved to include bartenders in *Meller*. Plaintiff does not explain why his counsel's filing in *Meller* tolled the statute of limitations in this case. Although the Court has now conditionally certified a portion of Plaintiff's Proposed Class, that outcome was not preordained at the time Plaintiff's

---

5.   "'[C]ommunication through email is [now] the norm.'" *Butler v. DirectSAT USA, LLC*, 876 F. Supp. 2d 560, 575 (D. Md. 2012) (quoting *In re Deloitte & Touche, LLP Overtime Litig.*, No. 11 Civ. 2461(RMB)(THK), 2012 WL 340114, at *2 (S.D.N.Y. Jan. 17, 2012)).

6.   The same counsel represent the parties in this case and in *Meller*.

counsel moved to include bartenders in the *Meller* case. Thus, the Court declines to extend the statute of limitations beyond three years from the date the notice is mailed.[7]

Finally, Defendants object to Plaintiff's proposed notice on some of the substantive grounds discussed above. However, Defendants also object to "several errors throughout the notice." (Defs.' Mem. Opp'n Pl.'s Mot. Cond'l Class Certification, ECF No. 13, at 15.) Defendants have not specified what those errors are. In lieu of the Court undertaking a redline analysis of the dueling notices, the Court orders the parties to meet and confer to determine whether there are any remaining issues after the proposed notice is amended to reflect the contents of this Order. If such issues remain, the parties may request the Court's intervention by raising the specific issue or issues that they cannot resolve.

## CONCLUSION

For the foregoing reasons, it is **ORDERED** that Plaintiff's motion for conditional certification is **GRANTED IN PART** and **DENIED IN PART**.

**AND IT IS SO ORDERED.**

                                                                                    _____
                                                                                    PATRICK MICHAEL DUFFY
                                                                                    United States District Judge

**February 27, 2017**
**Charleston, South Carolina**

---

7. The Court's use of a three-year time period is not meant to express any opinion as to whether or not Defendants' alleged violations were willful.